**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MONIQUE SHAWNAE DRAGER<br><br>Defendant. | **No. 09-CR-4045-DEO**<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

Before the Court and on file at Docket No. 654 is the Report and Recommendation ("R&R") issued by Magistrate Judge Leonard T. Strand concerning the USA's Petition to Revoke Supervised Release, Docket # 641 and 651. The R&R recommends that the Government's motion to revoke Ms. Drager's supervised release be granted, that Ms. Drager be sentenced to time served, and that the existing terms of Ms. Drager's Terms of Supervised Release [hereinafter TSR] be reimposed and modified as set out in the Order. Objections were due by January 3, 2013, and none have been filed.

**I. FACTS**

On May 28, 2010, Ms. Drager was sentenced to four months of incarceration and five years of supervised release based on her plea of guilty to conspiracy to manufacture 50 grams or more of actual (pure) methamphetamine. See Doc. No. 374.

After completing her federal prison term, Ms. Drager began serving her term of supervised release (TSR) on September 24, 2010. The supplemental and substituted petition to revoke Ms. Drager's TSR (Docket #651) itemizes six categories of alleged violations arising from the following alleged facts: Ms. Drager notified United States Probation (Probation) on June 24, 2011, that she had been arrested for shoplifting. She was arrested on June 22, 2011, for putting two bottles of lotion in her purse at Hy-Vee. She admitted the violation and offered no explanation for her actions. Her TSR was modified on July 5, 2011, to include two weekends in jail, which have been completed. On July 6, 2012, Probation was notified that the sweat patch worn by Ms. Drager from June 18, 2012, to June 29, 2012, tested positive for amphetamine and methamphetamine. Ms. Drager admitted to using methamphetamine the last weekend in June 2012. Her TSR was modified to include four weekends in jail, which have been completed. She was also referred to substance abuse counseling, which she completed on September 26, 2012. Ms. Drager failed to appear for required urine testing on May 16, 2011, August 1, 2011, October 27, 2011, October 28, 2011, and October 31, 2011. In addition, dilute

specimens were submitted on May 5, 2011, May 17, 2011, September 7, 2011, October 4, 2011, and November 1, 2011. Due to these violations, Ms. Drager was placed on a sweat patch on November 8, 2011.

Probation was notified on November 27, 2012, that the sweat patch worn by Ms. Drager from November 1 to November 15, 2012 (the First November Patch), tested positive for amphetamine and methamphetamine. When confronted, Ms. Drager denied using methamphetamine. However, at the December 10, 2012, hearing, Ms. Drager admitted to using methamphetamine. On December 10, 2012, Probation was notified that the sweat patch worn by Ms. Drager from November 15 to November 29, 2012 (the Second November Patch), also tested positive for methamphetamine. Ms. Drager claimed it was caused by being around other people using methamphetamine on November 10 and 11. At the December 19, 2012, hearing, Ms. Drager admitted that the Second November Patch tested positive and also to the violation of associating with persons engaged in criminal activity. However, she contended (through counsel) that the positive result from the Second November Patch is explained by the same events that caused the First November Patch to test

3

positive. That is, she used methamphetamine and was around others who were also using on the weekend of November 10 and 11.

Thus, while she admits use on those dates, she denies any subsequent use and claims that the events of those two days explain both positive results. The Government's witness, U.S. Probation Officer Ronica Mork, testified about her knowledge of sweat patches. Based on her training and her prior consultations with an expert in the field, she explained that methamphetamine must be ingested before a patch can test positive for such use. Moreover, she stated that such use must occur no more than two to three days before the patch is applied for that patch to test positive. If a person's last use was four days or longer before the patch was applied, the patch would not test positive. On cross-examination, Ms. Mork acknowledged that testing will reveal a reduced level of a substance the further removed it is from the actual use. She further acknowledged that the results from the first November patch showed a level of 60.0 ng/mL[1] while the results from the

---

[1] The abbreviation for nanograms per milliliter. http://www.health.am/acronyms (Last visited January 9, 2013).

second November patch showed a level of 38.0 ng/mL.

**II. STANDARD**

Pursuant to statue, this Court's standard of review for a magistrate judge's Report and Recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1).

**III. ANALYSIS**

The Court has reviewed the Report and Recommendation, along with the entire file, and finds Judge Strand's analysis and recommendations are appropriate and correct. The Court notes that neither party has filed an objection. Accordingly, the Court hereby **ADOPTS** the Report and Recommendation in its entirety. For the reasons set forth therein, the Court finds by a preponderance of the evidence that Ms. Drager violated the terms and conditions of her supervised release.[2]

---

[2] Although the contents of the Report and Recommendation will not be repeated, it is hereby referenced and incorporated as if fully set out herein.

Defendant Drager has two children, Bryce Drager, age 18; and Jordyn Drager, age 15. The Court has been apprised by U.S. Probation that the family will take care of the children during Ms. Drager's five (5) month period of placement at the Residential Reentry Center (RRC).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that this Court accepts Judge Strand's Report and Recommendation. The Court orders U.S. Probation to take all necessary steps to comply with the Report and Recommendation, which states that:

> I have given careful consideration to the factors set forth in 18 U.S.C. § 3553(a), and hereby recommend that Ms. Drager's TSR be revoked and that Ms. Drager be sentenced to time served. I further recommend that the terms of Ms. Drager's TSR be re-imposed and that they be modified to require Ms. Drager to reside in a Residential Reentry Center for a period of five months.
>
> I find that revocation with a sentence of time served, along with the modifications described above, will further the goals of deterrence and incapacitation, reflects the seriousness of Ms. Drager's conduct, and provides just punishment for such conduct. Ms. Drager has not been forthcoming with her probation officer by denying violations and later admitting them in court. She has continued to use a controlled substance (regardless of the admitted number of

occasions) after a previous modification of four weekends in jail and substance abuse treatment was imposed for such conduct. However, she has maintained steady employment and is described as a valuable employee. My recommended disposition allows her to maintain her employment while affording deterrence from future violations. I find that the sentence as described above is "sufficient, but not greater than necessary, to comply with" the sentence's purposes as set forth in § 3553(a)(2) and will not result in any sentencing disparities. See 18 U.S.C. § 3553(a).

Docket #654, p. 9.

**IT IS SO ORDERED** this 10th day of January, 2013.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa